## Coates et al. v. Commonwealth.

(Decided June 12, 1934.)

ROSS & ROSS and GEO. C. ROBBINS for appellants.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Reece Coates and Garland Coates, by the grand jury of Madison county, were jointly indicted charged with the crime of willful murder, committed by the shooting and killing of Albert Melton.

On the night Melton was killed, Garland Coates went to his home about 10 o'clock and called for Melton, who was at the time on the back porch of his home. The door of his home was closed and latched; Coates broke it off the hinges, knocked Melton's wife down, and demanded that she tell him where her husband was. At that time Melton was afflicted with asthma and was engaged in inhailing smoke to relieve his condition. Mrs. Melton requested Coates to go home, when he responded: "I'm not going until I kill that red-eyed S— of B—." Melton came in the room and Coates declared: "I'm going to cut you into shoe strings, you G— D— S— of B—," and "made a lunge with his knife," when Melton backed out of the house, and asked Coates to go home and behave himself. On Coates stating to Melton he was "going to cut him into shoe strings," Melton's reply was: "I'm not able to fight—a kid could whip me." Coates again threatened to kill him. At this point, people came by on their way from church, when Mrs. Melton went after a brother of Coates; Albert Mel-

ton, at the same time, induced Coates to go away with him. On their way, they turned the corner of a store as though they were going toward the railroad. Joe Riddle, Albert Melton, and Frank Scott, within a few minutes after Melton and Garland Coates left Melton's home, were in company with each other, when they met an automobile which parted them, Scott and Melton passing on one side and Riddle on the other; Garland Coates came up to them, and as Melton and Scott were in the act of leaving, Garlan Coates said to Riddle: "Scott had called his mother a B——." Reece Coates was standing near Garland. Reece Coates called to Riddle and Melton, and at that time he was "trying to cry," Reece at the same time stated: "I don't give a G—— D—— for a Riddle or anybody else and what are you doing fussing around here?" Riddle turned and went across to his store on the corner, and as and when he reached within four or five feet of the door, he heard a shot, saw the flash, and then immediately another shot. He immediately returned to where he had left Scott, Melton, and Coates, and found Scott and Melton lying on the ground, both shot; Scott in a dying condition. Melton asked Riddle to get a doctor and announced he was dying. Scott was lame and walked with a cane. When Riddle arrived at the place where he found him shot, his cane was hanging on the fence. Melton was shot in the abdomen about the pit of the stomach or a little above; two and a half inches above the navel. He had a bruise on his lips and a knot on the back of his head. He was carried immediately to the hospital, and died within about 32 hours from the gunshot wound in the abdomen.

The defense of the Coates is "they jumped on them."

On a trial before a jury a verdict was returned fixing their punishment at confinement in the penitentiary for life. From a judgment entered thereon, they appeal, insisting the court erred in failing to sustain their challenge to a prospective juror, Collyer, in not excusing juror May, because of certain answers made by him on the voir dire examination, and in not excusing the juror Murphy, on account of answers he made in response to questions on the voir dire examination.

The record discloses that on the examination of Collyer, touching his qualifications as a juror, he stated

he had heard the case "talked about; had read the newspaper account of the affair, and based upon such street talk, rumor and newspaper account, he had formed an opinion"; "but he could and would disregard such opinion"; "but he could and would disregard such opinion so formed; that it would not influence him in any way, even unconsciously, in finding a verdict; that there was no question of his ability to try the case solely on the sworn testimony introduced."

The court refused to excuse Collyer after his answers disclosing these facts. On this account they exercised a peremptory challenge, and excused him.

The record fails to disclose the questions propounded to May and Murphy and their respective answers touching their qualification as jurors. May was peremptorily challenged; this exhausting the 15 challenges allowed them by law. Murphy was not challenged for cause, and at the time of his qualification the accused had exhausted their 15 peremptory challenges.

In the Coates' brief, it is stated:

"When the court overruled defendants' motion to excuse Mr. Collyer and defendants had excepted, defendants did not make a similar motion or challenge to Mr. May or Mr. Murphy, because the court had ruled adversely to the defendants on a like motion, as to Mr. Collyer, and counsel believed that if Mr. Murphy or Mr. May were challenged for cause the court would adhere to the ruling as to Mr. Collyer."

As to the propriety of the ruling of the court as to Collyer, the question is neither a new nor a debatable one.

The particular causes of the challenge under section 208, Crimnal Code of Practice, are either actual or implied bias.

Section 209 defines actual bias, thus:

"Actual bias is the existence of such a state of mind on the part of the juror, in regard to the case, or to either party, as satisfies the court, in the exercise of a sound discretion, that he can not try the case impartially and without prejudice to the substantial rights of the parties challenging. It shall

not be a cause of challenge that a juror has read in the newspapers an account of the commission of the crime with which the prisoner is charged, if such juror shall state on oath that he believes he can render an impartial verdict according to the law and the evidence; and provided further, that in the trial of any criminal cause the fact that a person called as a juror has formed an opinion or impression, based upon rumor or upon newspaper statements [about the truth of which he has expressed no opinion], shall not disqualify him to serve as a juror in such case, if he shall, upon oath, state that he believes he can fairly and impartially render a verdict therein in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statement.''

The answers of Collyer disclose no actual bias as the term is defined by this Code provision.

An accused's right to challenge for actual bias is removed where the prospective juror states he can discard his previously former opinion and render a fair and impartial verdict. Miller v. Commonwealth, 203 Ky. 437, 262 S. W. 579.

This rule fully sustains the ruling of the trial court as to Collyer. As to his rulings respecting May and Murphy, the record failing to disclose the questions propounded to them and the answers thereto, there is nothing before us. In the absence of the facts touching their qualifications, we are not authorized to conclude the action of the circuit court in relation thereto was prejudicial to the substantial rights of the accused.

True it is, where the court on the trial of a civil action or criminal prosecution has once ruled on the competency of offered testimony, the party objecting to his ruling, after saving an exception thereto, need not continuously thereafter object to the same line of interrogation based on the same ground when it arises in the examination of the same or other witnesses. Cincinnati, N. O. & T. P. R. Co. v. Bennette, 134 Ky. 19, 119 S. W. 181; Louisville & N. R. R. Co. v. Rowland, 215 Ky. 663, 286 S. W. 929; Koehler v. Commonwealth, 222 Ky. 670, 1 S. W. (2d) 1072; Berry v. Commonwealth, 227 Ky. 528, 13 S. W. (2d) 521. This rule and the reasons therefor do not obtain on voir dire examination of jurors. The qualification of a juror is determinable on

the particular facts disclosed by his examination. The accused is required to save exceptions to the action of the court when determining the qualification of each individual juror. In order to have the action of the trial court reviewed on an appeal, the facts disclosed on the separate examination of each juror must be brought here, as provided by the Code of Practice. See Criminal Code, sec. 282.

No other ground of reversal is presented or argued, and, perceiving no error prejudicial to the substantial rights of the Coates, the judgment is affirmed.